PEOPLE v MALIK

CRIMINAL LAW—WEAPONS—POSSESSION—KARATE STICKS—DESCRIP-
    TION—APPEAL AND ERROR.
    The statute proscribing possession of a bludgeon was not intended
    to include karate sticks which are different instruments with a
    different description from a bludgeon; to base a criminal convic-
    tion on mere possession, it must clearly appear that the thing
    possessed answers the description of the proscribed instrument
    or weapon (MCLA 750.224; MSA 28.421).

Appeal from Eaton, Richard Robinson, J. Sub-
mitted May 5, 1976, at Grand Rapids. (Docket No.
22985.) Decided July 19, 1976.

Donald Malik was convicted of possession of a
dangerous weapon. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *David L. Smith,*
Prosecuting Attorney (Prosecuting Attorney's Ap-
pellate Service, by *Lee W. Atkinson),* for the peo-
ple.

*Kenneth Lerner,* Assistant State Appellate De-
fender, for defendant.

Before: BASHARA, P. J., and ALLEN and C. J.
HOEHN,* JJ.

BASHARA, P. J. Defendant appeals his jury con-

REFERENCE FOR POINTS IN HEADNOTE
79 Am Jur 2d, Weapons and Firearms § 7 *et seq.*
* Circuit judge, sitting on the Court of Appeals by assignment.

viction of possession of a dangerous weapon, MCLA 750.224; MSA 28.421.

Relevant facts appear to be undisputed. On March 19, 1974, two police officers were driving past an old abandoned mill when they noticed two people standing in the doorway. They approached to ask them to leave the premises because they felt the mill was unsafe. When defendant came forward, one officer observed something sticking out from defendant's belt which he thought was a shotgun.

The officer drew his revolver and searched the defendant. The "something" proved to be a pair of karate sticks. They were confiscated by the officer, although he admitted he did not know what they were.

No arrest was made at that time. However, the next day a warrant was issued charging the defendant with possession of a dangerous weapon, to wit: a bludgeon in the form of karate sticks.

The defendant argued at trial and on appeal that the statute in question was not intended to proscribe the use of karate sticks. Several issues are raised here, but we shall confine the discussion to the above issue. We conclude that the statute in its present form was not intended to include karate sticks as dangerous weapons.[1]

At trial a state weapons expert testified that karate sticks date back about 350 years. They were described as two sticks of varying shape, connected by nylon, leather or chain. They are intended for use in the martial art of karate and at least one college of this state offers instruction on their use.

---

[1] It is our understanding that an amendment to the statute has been introduced in the Legislature which, if passed, would include karate sticks within the statute.

MCLA 750.224; MSA 28.421 provides:

"*Any person* who shall manufacture, sell, offer for sale or *possess* any machine gun or firearm which shoots or is designed to shoot automatically more than 1 shot without manual reloading, by a single function of the trigger, or any muffler, silencer or device for deadening or muffling the sound of a discharged firearm, or any bomb, or bomb shell, black-jack, slung shot, billy, metallic knuckles, sand club, sand bag, or *bludgeon* or any gas ejecting device, weapon, cartridge, container or contrivance designed or equipped for or capable of ejecting any gas which will either temporarily or permanently disable, incapacitate, injure or harm any person with whom it comes in contact, *shall be guilty of a felony,* punishable by imprisonment in the state prison for not more than 5 years or by a fine of not more than $2,500.00." (Emphasis added.)

The prosecutor has proceeded on the basis that karate sticks, while not specifically enumerated, fall into the "bludgeon" category. Indeed, the trial judge's instructions were couched upon the tenet that if the jury could find that the karate sticks were a "bludgeon",[2] then defendant could be found guilty of violating the statute.

There is no precedent that we have been able to locate that determines this precise question. We must scan the statute, definitions and logic to provide the answer. A "bludgeon" is variously defined as:

"[A] short stout stick or club, with one end loaded or

---

[2] The trial judge also instructed as follows: " * * * and a bludgeon is defined for us as, a blunt striking instrument likely to produce death or great bodily injury. And the people must prove, third, that the defendant at the time he had this instrument in his possession, if he did, knew that it was a bludgeon. In other words, knew that it was a striking instrument likely to produce death or great bodily harm."

We consider the instruction to be error, since it provided the jury with a test of intent not included within the confines of this statute.

thicker and heavier than the other, used as a weapon."
I *The Oxford English Dictionary* 942 (1933).

"[A] short, heavy club with one end weighted, or
thicker and heavier than the other." *The Random
House Dictionary of the English Language,* 161 (una-
bridged ed 1971).

"1. a short stick that usu. has one thick or loaded end
and is used as a weapon. 2: something used to attack or
bully." *Webster's New Collegiate Dictionary,* 121 (G & C
Merriam Co ed 1975).

A karate stick is described as:

" * * * two blocks of wood connected by thongs,
strands of horse hair, or even chains." Ratti & West-
brook, *Secrets of the Samuri: A Survey of the Martial
Arts of Feudal Japan* (1973).

"21-inch sticks of hard wood joined together by sev-
eral inches of rope, leather, or chain." *Newsweek,* Oct.
15, 1973, p 67.

" * * * two or more sticks, clubs, bars, or rods to be
used as handles, connected by a rope, cord, wire or
chain in the design of a weapon used in connection with
the practice of a system of self-defense such as Karate."
Cal Penal Code § 12020(d)(2).

Bludgeons and karate sticks are, therefore,
clearly dissimilar. They are different instruments
with different descriptions.

The statute itself provides the cornerstone of our
reasoning. It is very specific and lists the items
which are illegal to possess. Where the Legislature
lists items in a statute, it is the general rule that
express mention of one thing implies the exclusion
of other similar things *(expressio unius est exclu-
sio alterius), Stowers v Wolodzko,* 386 Mich 119,
133; 191 NW2d 355 (1971).

Similarily, in *People v Brown,* 253 Mich 537,

542; 235 NW 245 (1931), our Supreme Court discussed the predecessor of the present statute as follows:

> "The list of weapons in section 16751, *supra,* is significant and demonstrates a definite intention of the Legislature to protect society from a recognized menace. It does not include ordinary guns, swords, revolvers, or other weapons usually relied upon by good citizens for defense or pleasure. It is partial inventory of the arsenal of the 'public enemy,' the 'gangster'. It describes some of the particular weapons with which he wars on the state and reddens his murderous trail."

Finally, two other states have dealt with the same or similar problems. In *People v Visarities,* 220 App Div 657; 222 NYS 401, 403 (1927), the New York Court construed a similar statute and found that an iron bar was not a bludgeon because:

> "To base a conviction on mere possession, it must clearly appear that the thing possessed answers the description of one of the prohibited instruments or weapons."

California has a similar statute, and yet its Legislature found it necessary to pass a law specifically dealing with karate sticks.[3] The clear implication is that no other law adequately dealt with them.

In reaching this conclusion, we are careful to observe that the Legislature may well perceive the need to include karate sticks as dangerous weapons, and that it would not be improper to place them within the bounds of the statute.

Reversed.

---

[3] Cal Penal Code § 12020(d)(2).